THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| LIONEL SCOTT ELLISON, | CV 18-00056-BLG-BMM-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| OFFICER WASHINGTON, OFFICER GROSLOCK, OFFICER JOHNSON, and SGT. PETERS, | |
| Defendants. | |

The following motions are pending before the Court:  (1) Plaintiff Lionel Ellison's Motion for Summary Judgment (Doc. 41); (2) Defendant Grosulak's Motion for Summary Judgment (Doc. 47); (3) Mr. Ellison's Motion for Sanctions (Doc. 57); (4) Defendant Washington's Motion for Summary Judgment (Doc. 60); (5) Defendant Johnson's Motion for Summary Judgment (Doc. 64); (6) Defendant Peters's Motion for Summary Judgment (Doc. 68); (7) Mr. Ellison's "Demand for Disqualification of Defendants Counsel and Second Request for Sanctions against Counsel, Mark A.  English for his Continued Suppression of Requested Evidentiary Documentation that is Exculpatory to Plaintiff" (Doc. 80); (8) Mr. Ellison's "Motion to Dismiss Defendants' Motions for Summary Judgment" (Doc. 87); and (9) Mr. Ellison's Motion for Default Judgment (Doc. 89).

The Court first notes that the parties failed to comply with several of the

1

Court's Local Rules regarding these motions.  For example, Defendants'

Statements of Undisputed Facts (Docs. 49, 62, 66, 70), do not comply with Local

Rule 56.1 in that the facts are not set forth in serial form.  Yet, Defendants argued

in their reply briefs that Mr. Ellison's failure to file a Statement of Disputed Facts

in response to Defendants' motions for summary judgment should be construed as

an admission that there are no disputed facts.  The Court will not do so because

Defendants presented their Statements of Undisputed Facts in narrative form as

opposed to serial form.  In fact, the Court has been unable to rely on Defendants'

Statements of Undisputed Facts in the analysis of the above motions.  Mr. Ellison

also violated Local Rule 56.1 in that he failed to file a Statement of Undisputed

Facts with his Motion for Summary Judgment.  There is no excuse for these

violations of the Local Rules as there is a form which demonstrates the correct

format for statements of disputed facts.  Local Rules, Appendix C, Form A.

The parties are also in violation of Local Rule 7.2(b) which provides that

"only exhibits that are directly germane to the matter under consideration by the

court may be filed."  Perhaps most egregious is Defendant Grosulak's filing of Mr.

Ellison's entire criminal case file from state court (825 pages).  The Court fails to

see how anything within that record is relevant to his claims herein and none of the

Defendants explained the relevance of these documents.  Despite the irrelevance of

Mr. Ellison's criminal charges, convictions and sentences, Defendants copied and

pasted the same two to three pages regarding the nature and history of Mr.

Ellison's criminal charges nine times in their filings.  (Docs. 28, 48, 49, 61, 62, 65,

66, 69, 70.)  They spent the majority of each of the four Statements of Undisputed

Facts discussing Mr. Ellison's criminal charges.  An extensive history of Mr.

Ellison's criminal charges is not at all relevant to whether or not he was provided

food or assaulted at the Yellowstone County Detention Center (YCDF) and that is

the bulk of factual information provided to the Court by Defendants.

Similarly, Mr. Ellison has repeatedly filed the same documents and

photographs regarding the 2010 incident when he was allegedly assaulted.  He has

attempted to make these documents relevant to the case at bar, but it is completely

unnecessary to file numerous copies of these documents in the record.

Due to the parties' violations of Local rule 7.2(b) the following documents

will be stricken, they will not be considered for any purpose and will be sealed:

Documents 54-1:  state court criminal case file; Documents 79-1 at 2-21, 23-61:

additional copies of Mr. Ellison's documents regarding the 2010 incident when he

was allegedly assaulted.  Any party who files any additional irrelevant, redundant

exhibits in violation of Local Rule 7.2(b) will be subject to sanctions.

Finally, both parties have also violated Rule 5.2 by filing numerous

documents that contain Mr. Ellison's date of birth.

Despite these violations, the Court recommends that Mr. Ellison's motion

for summary judgment (Doc. 41) be denied; Officer Grosulak's motion for summary judgment (Doc. 47) be granted on all claims except Mr. Ellison's failure to protect regarding the December 10, 2015 alleged assault; Officer Washington's motion for summary judgment be granted on all claims except Mr. Ellison's September 22, 2015 food claim and his failure to protect claim regarding the December 10, 2015 alleged assault; Officer Johnson's motion for summary judgment be denied with regard to Mr. Ellison's failure to protect claim regarding the December 10, 2015 alleged assault; and Sgt. Peters' motion for summary judgment be granted.

Should these recommendations be adopted, this matter will be scheduled for trial on Mr. Ellison's claim that Defendant Washington denied him necessary food on September 22, 2015 and Mr. Ellison's failure to protect claim against Officers Grosulak, Washington and Johnson regarding the December 10, 2015 incident.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving

4

party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477 U.S. at 325); *see also* Fed.R.Civ.P. 56(c)(1)(B). Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. "A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Costa Cnty. Transit Auth.*, 653 F.3d 963, 966

(9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate

from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*,

810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the

opposing party "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted).

By notices provided on May 8, 2019 and June 25, 2019 (Docs. 50, 63, 67,

71), Mr.  Ellison was advised of the requirements for opposing a motion brought

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*,

154 F.3d 952, 957 (9th Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409

(9th Cir. 1988).

## II.  UNDISPUTED FACTS

### A.  September 22-23, 2015

Mr. Ellison was incarcerated at YCDF from February 26, 2015 until

December 22, 2015.  (Bodine Affidavit, Doc. 51 at 2.)   A jury trial regarding

criminal charges against Mr. Ellison was held from September 21, 2015 through

September 23, 2015.  During that criminal trial, Mr. Ellison was housed in

Classification, a unit within the YCDF.  (Bodine Affidavit, Doc. 51 at 2.)

Mr. Ellison alleges Defendants Washington and Grosulak refused to feed

him during the last two days of his criminal trial on September 22 and 23, 2015.

(Ellison MSJ, Doc. 41 at 5.)  Mr. Ellison contends, and Defendants do not dispute

that he is hypoglycemic.  Mr. Ellison claims that due to his condition he needs food on a regular schedule of five small meals in a 24-hour cycle and YCDF had supplied him with extra "no processed meat" sack meals from the first week of his detention.  (Ellison's MSJ, Doc. 41 at 5.)  Mr. Ellison alleges Officer Washington was aware of this condition as he had previously supplied him with these extra sack meals.  He alleges the only days he was not provided this sack meal was the final two days of his criminal trial.  (Ellison's MSJ Response, Doc. 79 at 2.)

On a September 20, 2015, Mr. Ellison submitted an inmate special request form, stating, "I have court early tomorrow.  Tomorrow morning may I shower & shave early (Breakfast) so I can be ready for court."  The response stated, "Denied—time outs are on a schedule."   (Doc. 41-1 at 14.)

On September 22, 2015, Mr. Ellison contends he collapsed after court.  The transport officer took Mr. Ellison back to YCDF and told Officer Anderson to make sure that the 'B' unit officers were told to feed Mr. Ellison.  Mr. Ellison contends he heard Officer Anderson tell Officers Washington and Grosulak that the transport guards ordered that Mr. Ellison be fed immediately.  Mr. Ellison alleges (and Defendants do not appear to dispute) that he was not given any food the evening of September 22, 2015.  Mr. Ellison presented an undated inmate special request form stating, "I hardly got lunch & no dinner yet its after 8.  Please feed me soon lightheaded & hypoglycemic is not good."  The response was, "Sir,

you get food at regular times through the day." (Doc. 41-1 at 13.) Mr. Ellison

contends it was Officer Washington who wrote this response and Defendants did

not dispute that allegation.

Officer Washington admits he was working in Classification on September

22, 2015 but he does not remember any problem with the meal service. He

testified that he did not recall a complaint from Mr. Ellison about not receiving a

meal and if Mr. Ellison had not been present for meal service, he would have

followed standard procedure to obtain a sack meal from the kitchen for him.

(Washington Aff., Doc. 75 at 1-2.) Officer Grosulak worked at YCDF on

September 22, 2015 but did not work in Classification. (Grosulak Time Sheet,

Doc. 53-1 at 1.)

On September 23, 2015, Mr. Ellison submitted an "Official Complaint"

stating, "Yesterday on the 22nd I received regular lunch late at court . . . Officer

Shirley took me home from Court . . . I could hardly stand and almost fell from

hypoglycemia. CO told B I needed food soon. . . They moved me back to B and

C. Officer Anderson said he could get food. It was almost 6:15 p.m. I asked C.O.

Washington about 7:00 for food—he refused both verbally and by kite." The

response on September 29, 2015, stated, "It was discussed and this information

was placed on briefing. This complaint was addressed and a remedy was found."

(Doc. 41-1 at 15.)

9

Mr. Ellison submits that the last day of trial (September 23, 2015), a guard brought him breakfast but only allowed him a couple bites of oatmeal and then took the food away and made Mr. Ellison go to the shower.  Mr. Ellison alleges he then waited two hours to be transported to court and by that time he was getting sick because the oatmeal had worn off.  The rest of the day at trial he was lightheaded and incoherent due to lack of food because his defense counsel refused to supply him food as he told the transport officers.

Mr. Ellison admits he was given sandwich the night of September 23, 2015 but contends that by 9:00 p.m. he was ill again from lack of food.  He has not however, provided any allegation that any named Defendant was responsible for denying him food on September 23, 2015.  Neither Officer Washington nor Officer Grosulak worked at YCDF on September 23, 2015.  (Washington Time Sheet, Doc. 76-1; Grosulak Time Sheet, Doc. 53-1 at 1.)

**B.  December 10, 2015**

From November 29, 2015 to December 11, 2015, Mr. Ellison was housed in Classification B with Steven Aalgaard as his cellmate.  (Bodine Aff., Doc. 78 at 2.) Mr. Ellison alleges that around the first of December 2015 (presumably November 29, 2015), Officers Johnson, Washington, and Grosulak placed Mr. Aalgaard in Mr. Ellison's cell.  Mr. Ellison told the guards that this was not allowed.  Mr. Aalgaard allegedly confirmed there was "bad history" between Mr. Aalgaard and

10

Mr. Ellison because Mr. Aalgaard had been Mr. Ellison's former employee and had been fired for theft and refusing a drug test.  (Ellison MSJ, Doc. 41 at 6-7.)

In their disclosure statement, Defendants admitted that Mr. Ellison complained to the Facility that Mr. Aalgaard posed a threat to him but the Facility did not believe that Mr. Aalgaard posed a threat to Mr. Ellison.  Defendants contended that Mr. Ellison had a history of false allegations against other inmates. (Defendants' Disclosure, Doc. 38 at 3.)

Mr. Ellison contends that on the evening of the assault (the night of December 10-December 11), Officer Grosulak called Mr. Aalgaard out of the cell for about an hour.  Later that night, Mr. Aalgaard allegedly stabbed Mr. Ellison three times and cut Mr. Ellison two other times.  Mr. Ellison contends he kicked the knife under the door of the cell and punched Mr. Aalgaard to keep him away. Mr. Ellison alleges that Officer Grosulak came and took the knife and ignored Mr. Ellison.  (Ellison Disclosure, Doc. 39 at 5.)

Mr. Ellison submitted a medical request form stating, "My cellmate freaked out last night in the dark, he stabbed me in the top of the head, my left ear, and left forearm.  Could you please look at these cuts.  Thank you."  The response indicated that Mr. Ellison was seen by the provider on December 11, 2015.  (Doc. 41-1 at 16.)

The December 11, 2015 medical record indicates that Mr. Ellison reported

an altercation with his cellmate last night.  He reported he was attacked with a pen and hit in the head and jaw.  He reported a minor headache but denied loss of consciousness and confusion.  The PA noted that Mr. Ellison had a 1 cm contusion in the mid left/superior parietal region (back of the head), a minor abrasion on his forehead but no battle signs.  He noted a minor abrasion on Mr. Ellison's left ear and a 20m superficial scratch of his left forearm.  But the PA specifically noted no signs of a stab wound on Mr. Ellison's arms, head, anterior or posterior trunk or abdomen.  The Clinical note was that Mr. Ellison had a few minor abrasions but no sign of any stab wounds.  (RiverStone Health report of PA Chris Caruso, PA-C, Doc. 74-1.)

Mr. Ellison contends he later saw Mr. Aalgaard carrying a large amount of property in a sack that he did not have before.  Mr. Ellison wrote a grievance which was answered by Sgt. Peters who confirmed that there had been many threats against Mr. Ellison.  (Ellison's MSJ, Doc. 41 at 6-7.)

Officer Grosulak was not on duty at the YCDF on December 9, 10 or 11, 2015.  (Grosulak timesheets, Doc. 53-1 at 2.)  Officer Johnson does not make cell assignments for inmates.  He admits that Mr. Ellison complained that his cellmate posed a threat to him, but he did not believe him because he contends Mr. Ellison had previously made false allegations against other inmates, including cellmates, to manipulate his unit and cell assignments.  (Johnson Aff., Doc. 72 at 1-2.)

Officer Washington made cell assignments in his unit with a priority towards the safety of the facility.  Any problems that arose were addressed, documented, and when necessary, he would confer with the sergeant on duty and/or classification.  Officer Washington testified that inmates would sometime try to manipulate their cell assignment by falsifying health conditions or saying they would fight their cellmate.  Officer Washington represents that a change would be made if the inmate's claims were confirmed with medical or documentation of a keep separate or when given the alternative they accepted this.  Officer Washington contends Mr. Ellison had made previous false allegations against other inmates, including cellmates, to manipulate his unit and cell assignments. (Washington Aff., Doc. 75 at 2.)

Sgt. Peters investigated the alleged assault but could not substantiate the assault.  For example, Mr. Ellison alleged Mr. Aalgaard stabbed him, but Mr. Ellison did not have stab wounds and Mr. Aalgaard did not have a knife.  Mr. Ellison also alleged that Mr. Aalgaard punched him, but Mr. Ellison did not have bruises from being punched and Mr. Aalgaard did not have any injuries to his knuckles.  Mr. Ellison also gave different descriptions of the assault.  In one version, he claimed Mr. Aalgaard stabbed him but in another version, he claimed Mr. Aalgaard punched him.  Mr. Aalgaard denied that he assaulted Mr. Ellison.  In addition, the guard on duty during the night did not notice any disturbance in Mr.

Ellison' s cell.  It is Sgt. Peters' belief that Mr. Ellison made a false allegation that the assault occurred in an attempt to have Mr. Aalgaard moved to another cell or unit.  (Peters' Aff., Doc. 77.)

### C. December 15, 2015

Mr. Ellison later complained to Sgt. Peters about the constant threats by jail staff and that other guards had allowed Mr. Ellison to be "piss bombed." (Complaint, Doc. 2 at 15-16.)  Mr. Ellison alleges Sgt. Peters failed to protect him from other inmates who placed urine and feces in his cell when he placed him in Classification C with the knowledge that some inmates in the unit posed a threat to him.  (Amended Complaint, Doc. 15 at 3, ¶ 9.)

Sgt. Peters testified that Mr. Ellison had a reputation of making false allegations against inmates that caused conflict between him and inmates.  On December 11, 2015, Sgt. Peters transferred Mr. Ellison from Classification B to Classification C after the alleged assault.  Sgt. Peters testified that he transferred Mr. Ellison to Classification C for his safety because it was one of the few units that did not have any inmates who had prior conflicts with Mr. Ellison.  Sgt. Peters did not believe that any of the inmates in Classification C posed a threat to Mr. Ellison.  (Peters' Aff., Doc. 77.)

On December 16, 2015, Mr. Ellison submitted a special request form to Sgt. Peters stating, "Sgt. – This morning I am in receipt of your statement on grievance

14

do nothing – Last night I was piss bombed again by gay with AIDS!!  3rd time same man . . .  I wrote 3 kites last night, showed Toland and Willette . . .  They laughed did nothing as before!!"  (Doc. 41-1 at 18.)

Brent Toland, a guard in the Facility, checked Mr. Ellison's cell.  He saw a small amount of water on the floor of the cell but no urine or feces.  Officer Toland asked Mr. Ellison to identify the inmate or inmates who allegedly placed the urine and feces in his cell, but Mr. Ellison refused to identify an inmate.  Officer Toland believed Mr. Ellison made a false allegation that an inmate placed urine and feces in his cell because Mr. Ellison had a reputation of false allegations against other inmates to manipulate his unit and cell placement.  (Toland Aff., Doc. 73 at 2.)

## III.  DISCUSSION OF SUMMARY JUDGMENT MOTIONS

The only remaining claims in this action are Mr. Ellison's conditions of confinement claims (failure to protect and failure to provide adequate food) and retaliation claims against Defendants Washington, Grosulak, Johnson, and Peters.

For purposes of these Findings, the Court assumes Mr. Ellison was a pretrial detainee while he was incarcerated at the YCDF and will analyze his conditions of confinement claims under the Fourteenth Amendment.  Such claims have the following elements:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
(2) Those conditions put the plaintiff at substantial risk of suffering

15

serious harm;
(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc).

With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015) (citation and internal quotation marks omitted); *Castro*, 833 F.3d at 1071. (citations, internal brackets and internal quotation marks omitted).  A plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard. *Castro*, 833 F.3d at 1071.  The mere lack of due care is insufficient. *Castro*, 833 F.3d at 1071 (citation and internal quotation marks omitted).

### A.   Denial of Meals

Although Mr. Ellison alleges he was denied meals on both September 22 and 23, 2015, he presented no evidence that any Defendant was responsible for the alleged denial of meals on September 23, 2015.  In fact, the undisputed evidence is that Officers Grosulak and Washington did not work at YCDF on September 23, 2015.  (Time sheets, Doc. 53-1, 76-1.)  Mr. Ellison's claims regarding September

16

23, 2015 will be recommended for dismissal and the Court will limit its discussion
to the events of September 22, 2015.

### 1.  Officer Grosulak

Defendant Grosulak testified that he did not work in the Classification unit
on September 22, 2015.  (Grosulak Aff., Doc. 52 at 2.)  In addition, according to
Commander Roger Bodine's affidavit, the officer activity log indicates Officer
Grosulak was not working in Classification on September 22, 2015.  (Doc. 51 at
2.)  Even if Officer Grosulak was in the Classification unit on September 22, 2015
as alleged by Mr. Ellison, if he was not working that unit, he was not responsible
for getting Mr. Ellison food.  Further, Mr. Ellison did not mention Officer
Grosulak in his "official complaint" regarding this issue.  (Doc. 41-1 at 15.)
Officer Grosulak's motion for summary judgment on Mr. Ellison's claims
regarding denial of meals should be granted.

### 2.  Officer Washington

Officer Washington contends he is entitled to qualified immunity.  Qualified
immunity shields government officials "from liability for civil damages insofar as
their conduct does not violate clearly established statutory or constitutional rights
of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S.
800, 818 (1982).  The protection of qualified immunity applies regardless of
whether the government official makes an error that is "a mistake of law, a mistake

17

of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted).  The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law. . . ." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The qualified immunity inquiry has two prongs:  (1) "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (*quoting Pearson*, 555 U.S. at 232).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  This inquiry is wholly objective and is undertaken considering the specific factual circumstances of the case. *Saucier*, 533 U.S. at 201.  "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 245.  Where there is a dispute in the underlying evidence, qualified immunity cannot be granted. *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate.")

### a.  Constitutional Violation

Taking the facts in the light most favorable to Mr. Ellison, Officer Washington was on duty in the Classification unit on September 22, 2015 and was told that Mr. Ellison needed food.  Officer Washington was aware that Mr. Ellison was hypoglycemic because he had previously provided extra meals to Mr. Ellison and when Mr. Ellison asked verbally and in writing for food, Officer Washington denied his requests.

Officer Washington does not recall Mr. Ellison's complaint and his standard procedure would have been to get him a sack meal, but he does not recall his specific actions on that evening.  Therefore, there is a genuine issue of material fact regarding whether Officer Washington made an intentional decision to deny Mr. Ellison food knowing that the denial of such food would place Mr. Ellison at a substantial risk of suffering serious harm, that he did not take reasonable available measures to abate that risk, even though a reasonable officer in his position would have appreciated the risk, and by not giving Mr. Ellison food it caused injury.

### b.  Clearly Established

Officer Washington argues that he is entitled to qualified immunity because it is not clearly established that a guard's failure to provide an inmate with one meal violates the inmate's constitutional rights.  Given the facts alleged by Mr. Ellison and taken as true for purposes of these motions, Officer Washington

19

intentionally refused to give Mr. Ellison food after being advised that Mr. Ellison had not eaten and knowing that he was hypoglycemic.

Before the 2015 incident, it was clearly established that officers could not intentionally deny or delay access to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Specifically, in *Lolli v. County of Orange*, 351 F.3d 410 (9th Cir. 2003), evidence existed that the defendant officers were aware of the plaintiff inmate's extreme behavior, his obviously sickly appearance, and his explicit statements that he needed food because he was a diabetic and found defendants were not entitled to qualified immunity because their conduct ran afoul of the clearly established authority that an officer could not deny or delay access to medical care. *Lolli*, 351 F.3d at 421-422.

Similarly, a reasonable officer in Officer Washington's situation would have known that denying a hypoglycemic inmate medical treatment in the form of food is a constitutional violation. Summary judgment on qualified immunity grounds should be denied as to Mr. Ellison's denial of a meal claim against Officer Washington regarding the September 22, 2015 incident.

### B. Failure to Protect

#### 1. Placement in Cell with Inmate Aalgaard

Mr. Ellison alleges Defendants Washington, Grosulak, and Johnson placed a combative inmate into his segregated cell, against jail policy. Mr. Ellison claims

he was segregated due to gang threats of violence and death made against him.  He alleges that despite these threats, Defendants placed Mr. Aalgaard into his cell and Mr. Aalgaard produced a knife and stabbed Mr. Ellison three times.  (Ellison's MSJ, Doc. 41 at 3.)  Mr. Ellison contends Mr. Aalgaard was Mr. Ellison's former employee who had been fired due to drug use and theft.  Mr. Ellison alleges the officers ignored his complaints regarding his concern for his safety while housed with Mr. Aalgaard.

Defendant Grosulak defends against Mr. Ellison's claims on the grounds that he did not work on December 10, 2015 but the issue is whether Defendants made an intentional decision to place Mr. Ellison at a substantial risk of suffering serious harm by placing him in the cell with Mr. Aalgaard.  Defendants admit that they made an intentional decision with respect to placing Mr. Aalgaard into Mr. Ellison's cell.  They admit that Mr. Ellison raised concerns for his safety.  Mr. Ellison contends that Mr. Aalgaard also agreed that it was a bad idea to house him in the same cell with Mr. Ellison.  Defendants do not dispute this representation.

Defendants took no available measures to abate any risk which Mr. Ellison may have been under.  They simply defend on the basis that they did not believe Mr. Ellison.  They presented no evidence to substantiate this belief or any evidence to demonstrate it was a reasonable belief.  In Defendants' Disclosure Statement they represent that Sgt. Peters and Officer Robinson conducted investigations

21

regarding this incident and wrote reports on those investigations, but those documents are not included in the record.  (Defendants' Disclosure, Doc. 38.)  Defendants' conclusory statements that Mr. Ellison had a reputation for making false allegations are insufficient without evidentiary support.  The Court agrees that Mr. Ellison's claims of being stabbed are unsubstantiated, but the medical records indicate that he did suffer minor contusions.  Defendants are asking this Court to do what it appears they did – simply disbelieve Mr. Ellison.  The Court must take the facts in the light most favorable to Mr. Ellison.  As such, there is a genuine issue of fact regarding whether Mr. Ellison was placed at a substantial risk of suffering serious harm when he was placed in the cell with Mr. Aalgaard and whether that placement actually caused him injury.  Defendants Grosulak, Washington, and Johnson's motions for summary judgment on Mr. Ellison's failure to protect claims regarding the December 10, 2015 alleged assault should be denied.

### 2.  Placement in Classification C

In his Amended Complaint, Mr. Ellison alleges Sgt. Peters placed Mr. Ellison in Classification C where he was assaulted by other inmates who urinated in a sack containing feces and squirted it under Mr. Ellison's door.  (Amended Complaint, Doc. 15 at 3.)  Mr. Ellison submitted a grievance on December 11, 2015 complaining that Sgt. Peters had moved Mr. Ellison to population B after the

22

Aalgaard incident.  Sgt. Peters responded that Mr. Ellison was moved for his safety and because inmates CA and CB had made threats about him.  (Doc. 41-1 at 19.) Sgt. Peters filed an affidavit stating that Mr. Ellison complained that inmates placed urine and feces in his cell, but staff investigated the allegation and did not substantiate the allegation.  (Peters Aff., Doc. 46.)  Officer Brett Toland investigated the incident by checking Mr. Ellison's cell and did find not urine or feces.  Mr. Ellison refused to identify the inmate or inmates who allegedly placed the urine and feces in his cell.   Officer Toland concluded that this was a false allegation.  (Toland Aff., Doc. 73.)

Aside from his allegation against Sgt. Peters in the Amended Complaint, Mr. Ellison has provided no additional argument or evidence regarding Sgt. Peters' actions in this regard.  There is no evidence that Sgt. Peters made an intentional decision to place Mr. Ellison at a substantial risk of suffering serious harm.  Sgt. Peters' motion for summary judgment should be granted.

### C.  Retaliation

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

23

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (*citing Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000)).  It is the plaintiff's burden to prove each of these elements.  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

Mr. Ellison alleges that Yellowstone County Detective Frank Fritz had an affair with Mr. Ellison's ex-wife and together they stole most of Mr. Ellison's property totaling over $200,000.00.  He claims they then hired two Nortanio gang member to abduct, torture, and rape Mr. Ellison and dump him over a 155-foot cliff.  In his Amended Complaint, Mr. Ellison alleged that Defendants submitted him to extreme bodily harm in retaliation for his statements that Detective Fritz committed crimes.  (Amended Complaint, Doc. 15 at 4.)

To survive summary judgment on a retaliation claim, a plaintiff must put forth evidence of retaliatory motive.  *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).  Thus, here, Mr. Ellison must show that Defendants' actions alleged herein that his statements made against Detective Fritz were "the 'substantial' or 'motivating' factor" behind Defendants' conduct.  *Soranno's Gasco, Inc.  v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  To show the presence of a retaliatory motive on a motion for summary judgment, Mr. Ellison needed to "'put forth evidence of retaliatory motive that, taken in the light most favorable to him, presents a genuine issue of material fact as to'" Defendants' intent in denying him meals and allowing him to be assaulted.  *Brodheim v. Cry*, 584 F.3d 1262, 1271

24

(9th Cir. 2009) (*quoting Bruce*, 351 F.3d at 1289).  Evidence of retaliatory motive

may include the timing of the adverse action.  *Bruce*, 351 F.3d at 1288.

Mr. Ellison has not established how the denial of a meal on September 22,

2015 and the alleged assault on December 10, 2015 were in any way related to any

of the actions which may have been taken against him four years earlier.  Mr.

Ellison's retaliation claims should be dismissed.

## IV.   MOTIONS FOR SANCTIONS AND DEFAULT

Mr. Ellison has filed three motions for sanctions based upon Defendants'

counsel's alleged failure to produce documents in discovery.  (Docs.  57, 80, and

89.)  In his first motion, he asks the Court to strike Defendant Grosulak's Motion

for Summary and order default judgment against Defendants for a continued

course of illegal and unconstitutional acts to protect a member of the Yellowstone

County Law Enforcement Community.  (Doc. 57.)  In his second motion, he sees

to disqualify Defendants' counsel "due to his continued 'bad faith' acts concerning

his continued suppression of requested records and information pertaining to the

employment records of his clients, the Defendants."  (Doc. 80.)  In his third

motion, he seeks default judgment based upon the "'bad faith' acts and omissions

by defendants and their counsel of records; in violation of the Federal Rules of

Civil Procedure, Rule 37(b)(2)(A)(vi)."  (Doc. 89.)

These motions are construed as motions for sanctions based upon alleged

discovery violations, but there are two problems with the motions.  First, according

to Defendants' responses, Mr. Ellison did not submit discovery requests pursuant

to the Federal Rules of Civil Procedure.  *See e.g.* Fed.R.Civ.P. 33 (interrogatories);

34 (requests for production of documents); 36 (requests for admissions).

(Defendants' Response, Doc. 59, at 2.)  Even if he had, Mr. Ellison did not attach

those discovery requests to his various motions as required by Local Rule

26.3(c)(2)(C).  His informal correspondence to counsel is insufficient to obtain

discovery sanctions under Rule 37 of the Federal Rules of Civil Procedure which

provides:

> (B) To Compel a Discovery Response.  A party seeking discovery
> may move for an order compelling an answer, designation,
> production, or inspection.  This motion may be made if:
>> (i) a deponent fails to answer a question asked under Rule 30 or
>> 31;
>> (ii) a corporation or other entity fails to make a designation
>> under Rule 30(b)(6) or 31(a)(4);
>> (iii) a party fails to answer an interrogatory submitted under
>> Rule 33; or
>> (iv) a party fails to produce documents or fails to respond that
>> inspection will be permitted -- or fails to permit inspection -- as
>> requested under Rule 34.

Fed.R.Civ.P. 37(a)(3)(B).  As Mr. Ellison did not request discovery pursuant

to Rules 30, 31, 33, 34 of the Federal Rules of Civil Procedure, he is not

entitled to a Court order compelling that discovery or sanctioning counsel

for failing to comply.  Mr. Ellison's informal letter and/or his motions for

sanctions are insufficient under Rule 37.

Mr. Ellison's Motion for Sanctions (Doc. 57), Motion to Disqualify Counsel (Doc. 80), and Motion for Default (Doc. 89) will be denied.

Based upon the foregoing, the Court issues the following:

## ORDER

1.  Mr. Ellison's Motion for Sanctions (Doc. 57) is DENIED.

2.  Mr. Ellison's Demand for Disqualification of Defendants Counsel and Second Request for Sanctions against Counsel, Mark A. English for his Continued Suppression of Requested Evidentiary Documentation that is Exculpatory to Plaintiff (Doc. 80) is DENIED.

3.  Mr. Ellison's Motion for Default (Doc. 89) is DENIED.

4.  The Clerk of Court shall STRIKE and SEAL Document 54-1 and Document 79-1 at 2-21, 23-61.  These documents will not be considered for any purpose.

Further, the Court issues the following:

## FINDINGS AND RECOMMENDATIONS

1.  Mr. Ellison's Motion for Summary Judgment (Doc. 41) should be DENIED.

2.  Defendant Grosulak's Motion for Summary Judgment (Doc. 47) should be GRANTED on all claims except Mr. Ellison's failure to protect regarding the

December 10, 2015 alleged assault.

3.  Officer Washington's Motion for Summary Judgment (Doc. 60) should be GRANTED on all claims except Mr. Ellison's September 22, 2015 food claim and his failure to protect claim regarding the December 10, 2015 alleged assault.

4.  Officer Johnson's Motion for Summary Judgment (Doc. 64) should be DENIED.

5.  Defendant Peters's Motion for Summary Judgment (Doc. 68) should be GRANTED.

6.  Mr. Ellison's Motion to Dismiss Defendants' Motions for Summary Judgment (Doc. 87) should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed

---

[1]Mr. Ellison is entitled to an additional three days after the fourteen-day period would otherwise expire to file his objections.

until entry of the District Court's final judgment.

DATED this 4th day of November, 2019.


_/s/ John Johnston_____
John Johnston
United States Magistrate Judge